UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CLEMENTINE SPEARS, on behalf of herself and all other plaintiffs similarly situated, | ) ) ) ) |
| | ) No. 22-cv-4932 |
| Plaintiffs, | ) ) |
| | ) Judge Jeffrey I. Cummings |
| v. | ) ) |
| DAMEN HEALTHCARE GROUP, LLC d/b/a CITADEL HEALTHCARE and THE CITADEL OF BOURBONNAIS LLC, | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Clementine Spears ("Spears") filed this lawsuit on behalf of herself and all others similarly situated, against Damen Healthcare Group, LLC d/b/a Citadel Healthcare ("Damen") and the Citadel of Bourbonnais LLC ("Bourbonnais"). In the operative complaint, (Dckt. #22), Spears asserts that defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq.*, claiming they failed to correctly calculate her and the putative class's overtime wages. Damen moved to dismiss the claims against it for lack of subject matter jurisdiction and for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. Specifically, Damen asserts that Spears cannot establish standing or state a claim against it because Damen is not her employer under the FLSA and IMWL.

For the reasons set forth below, the Court finds that Spears can establish standing and that she has sufficiently pleaded a cause of action against Damen because she has plausibly alleged that Damen is an employer under single employer liability. As such, Damen's motion is denied.

1

I.       THE ALLEGATIONS OF SPEARS' AMENDED COMPLAINT

The facts alleged in Spears' amended complaint, (Dckt. #22), are as follows:

Spears worked as an hourly employee at a skilled nursing facility in Bourbonnais, Illinois. (Dckt. #22 ¶3). Defendant Damen, which is located in Skokie, Illinois, "operates and manages at least 13 healthcare facilities across Illinois, including [Bourbonnais]" and does business under the names "Citadel Healthcare," "Citadel Healthcare Network," "Citadel Healthcare Management," and "Citadel Financial Services." (*Id.* ¶4, Dckt #22-1). Defendant Bourbonnais is an LLC managed by Jonathon Aaron that owns a skilled nursing home located in Bourbonnais, Illinois.[1] (Dckt. #22 ¶5). Spears alleges that both Damen and Bourbonnais were her employers, or joint employers, as defined by the FLSA and IMWL. (*Id.* ¶¶8-9).

Spears' allegations regarding the relationship between Bourbonnais and Damen are as follows. Damen posted on Facebook that it added Bourbonnais and a Glenview facility to its "care network" in November 2020. (*Id.* ¶16). Bourbonnais submitted a 2021[2] cost report to the state of Illinois stating it is related to Damen and listing Damen as its "central office or parent organization." (*Id.* ¶15). Bourbonnais paid $395,018 in management fees that year to Damen, making up 6.7% of Damen's total operations in 2021. (*Id.*).

Spears further alleges that individuals who wish to apply for a job with any facility managed by Damen can apply via Damen's website, (*Id.* ¶19); Damen "manages the terms and conditions of its facilities' employees," (*Id.* ¶17); her employment application, code of conduct receipt acknowledgement, consent to alcohol/drug testing, and disciplinary action reports were

---

[1] Spears and Damen do not dispute that Spears worked at the skilled nursing home owned by Bourbonnais.

[2] Spears' amended complaint alleges the cost report is from 2001, however the attached exhibit is from 2021 and further, it appears Damen did not exist until 2014. (*See* Dckt. ##22-1, 22-2).

all with Damen, (*Id.* ¶¶18-19); and that defendants sought to incentivize employees to work by offering additional compensation or "incentives," including bonuses during the COVID-19 pandemic. (*Id.* ¶20 ("some incentives were labeled 'CovidBonus' or 'Ex-Shift' on paystubs")).

Spears claims that defendants violated the FLSA and IMWL because both statutes "require overtime wages of one and one-half times employee's 'regular rate' of pay, not the base rate, for all overtime hours." (*Id.* ¶21). She claims defendants "operated under a scheme" to deny her and the proposed class their required overtime compensation. (*Id.* ¶35). They allegedly calculated her and other employees' "regular rate" by not including all additional compensation in overtime pay, although an employee's "regular rate" should be calculated by dividing her total compensation for the week by the total number of hours worked and includes "all renumeration[sic] for employment paid to, or on behalf of, the employee." (*Id.* ¶¶22-23). Using the week of November 20, 2020, as an example, Spears alleges that she was underpaid by approximately $118.04. (*Id.* ¶27). Spears estimates that the putative class includes hundreds of current and former employees that suffered from similar underpayments. (*Id.* ¶36).

## II.     LEGAL STANDARD

Under the FLSA and IMWL, liability for unpaid wages extends only to "employers." 29 U.S.C. §207(a); 820 ILCS 105/4. Again, Damen moves to dismiss Spears' claims for lack of standing under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6) based on its assertion that Spears has failed to plead that Damen is her employer under the FLSA and IMWL. (Dckt. #43 at 6, 10-15).

Generally, courts determine jurisdiction based on the face of the complaint. *Rodriguez v. Legacy Healthcare Fin. Servs., LLC*, No. 22 CV 4532, 2023 WL 3864948, at *3 (N.D.Ill. June 7, 2023) (citing cases). However, courts may also consider deposition testimony, affidavits, and

other evidence from jurisdictional discovery where a defendant has challenged a plaintiff's standing. *Id.*; *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). In that scenario, a plaintiff "must support [her] assertion of subject matter jurisdiction with 'competent proof that establishes the jurisdictional facts by a preponderance of the evidence." *Rodriguez*, 2023 WL 3863948, at *3 (citing *McMillian v. Sheraton Chi. Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009)). If a plaintiff cannot establish standing, dismissal under 12(b)(1) is appropriate. *Id.*

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss under Rule 12(b)(6), the Court construes "the complaint in the light most favorable to the [non-moving party] accepting as true all well-pleaded facts and drawing reasonable inferences in [the non-moving party's] favor." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

**III. DISCUSSION**

As stated above, Damen asserts that Spears has failed to plead that Damen is her employer under the FLSA and IMWL. (Dckt. #43 at 6, 10-15). Spears, for her part, argues that "it is well established that an employee may have multiple employers at one time,"[3] (Dckt. #46 at 3), and that she "plausibly alleges Damen is her employer, the injuries are traceable to Damen and [thus] standing is established." (*Id.* at 15). As explained below, the Court finds that Spears plausibly alleges that Damen is her employer under the single employer doctrine, which is all

---

[3] Spears and Damen do not dispute that Bourbonnais was Spears' employer.

4

that is needed at this stage, and therefore denies Damen's 12(b)(1) motion. The Court also denies Damen's 12(b)(6) motion because Spears plausibly alleges an employment relationship and a decision on the merits would be premature at this stage of the case.

### A. Spears Has Standing to Bring Suit Against Damen Because She Plausibly Alleges an Employment Relationship.

Standing is an "essential ingredient of subject matter jurisdiction," *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 277-78 (7th Cir. 2020), and a "threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action." *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016). Article III of the Constitution limits federal judicial power to "certain 'cases and controversies,' and the 'irreducible constitutional minimum' of standing contains three elements." *Silha v. ACT, Inc.*, 807 F.3d 169, 172-73 (7th Cir. 2015), *quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992). To establish standing, the plaintiff must show "(1) [she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that he[r] injury will be addressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

Under the FLSA, "alleged employees' injuries are only traceable to, and redressable by, those who employed them." *Berger v. NCAA*, 843 F.3d 285, 289 (7th Cir. 2016) (cleaned up). To sufficiently allege standing, a plaintiff must therefore plausibly allege an injury traceable to, or redressable by, her employer. *Id.*; *Boyce v. SSP Am. MDW, LLC*, No. 19 CV 2157, 2019 WL 3554153, at *2 (N.D.Ill. July 31, 2019) ("Employees have standing to sue only their current or

former employers under the FLSA.");[4] *Jones v. Miss Kitty's Inc.*, No. 23 CV 1327, 2024 WL 2846600, at *4 (S.D.Ill. June 5, 2024) (the FLSA and IMWL only apply if an employer-employee relationship exists between the plaintiff and defendants).

On February 14, 2023, the Court permitted the parties to conduct jurisdictional discovery. (Dckt. ##29; 43 at 1 n.1). Both Spears and Damen rely on such jurisdictional discovery in support of their arguments for and against standing, including the deposition of Damen's Chief Financial Officer and Rule 30(b)(6) witness, Marcella Graf, (Dckt. ##43-2; 46-1), and the Management Services Agreement between Damen and Bourbonnais ("MSA"), (Dckt. ##43-4; 46-2).

Spears argues that Damen is an employer under three distinct theories of liability, including the single employer doctrine. Under the single employer doctrine, two nominally separate businesses may be considered as a single employer after weighing four factors from the Supreme Court's decision in *South Prairie Constr. Co. v. Int'l Union of Operating Engineers*, 425 U.S. 800, 803 (1976): (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership. *See also Trustees of Pension, Welfare and Vacation Fringe Ben. Funds of IBEW Local 701 v. Favia Elec. Co. Inc.*, 995 F.2d 785, 788 (7th Cir. 1993) (applying single employer doctrine to ERISA claims). Ultimately, "single employer status . . . is characterized by the absence of an arm's length relationship." *Lihli Fashions Corp., Inc. v. NLRB*, 80 F.3d 743, 747 (2d Cir. 1996) (cleaned up). In many cases, the determination of whether an entity is an employer requires a fact-intensive analysis

---

[4] Although Spears asserts claims under both the FLSA and IMWL, the analysis as to what constitutes an "employer" is the same under both. *Ivery v. RMH Franchise Corp.*, 280 F.Supp.3d 1121, 1128 n.2 (N.D.Ill. 2017) (collecting cases). The FLSA and IMWL provide parallel wage protection for Illinois workers such that "courts have generally interpreted their provisions to be coextensive, and . . . have generally applied the same analysis to both." *Callahan v. City of Chi.*, 78 F.Supp.3d 791, 821 (N.D.Ill. 2015) (citing *Condo v. Sysco Corp.*, 1 F.3d 599, 601 n.3 (7th Cir. 1993)).

6

that is "more appropriately resolved for summary judgment." *Brown v. Club Assist Road Service U.S., Inc.*, No. 12 CV 5710, 2013 WL 5304100, at *6 (N.D.Ill. Sept. 19, 2013). Nonetheless, the Court has a sufficient record from the jurisdictional discovery to evaluate the relevant factors and finds that Spears plausibly alleges Damen to be her employer under the single employer doctrine.[5] *See Reed v. Vintage Healthcare Servs., Inc.*, No. 24 CV 3186, 2025 WL 36231, at *2 (N.D.Ill. Jan. 6, 2025).

### 1. Interrelation

To establish whether two companies are interrelated, "[c]ourts have held that 'day-to-day operational matters' are [the] most relevant." *Chi. Regional Council of Carpenters Pension Fund v. TMG Corp.*, 206 F. Supp. 3d 1351, 1357 (N.D.Ill. 2016), *quoting Lippert Tile Co., Inc. v. Int'l Union of Bricklayers and Allied Craftsmen, Dist. Council of Wisc. & its Loc. 5*, 724 F.3d 939, 947 (7th Cir. 2013); *Hines v. JBR Trucking LLC*, No. 18 CV 2159, 2020 WL 1429907, at *5 (C.D.Ill. Mar. 24, 2020) (finding interrelation where companies shared office space and the same primary manager).

Damen cites its MSA with Bourbonnais to argue that it is merely a "service provider" and "not responsible for the operations of [Bourbonnais] ." (Dckt. #48 at 7 (citing Dckt. #46-2 at 2)). Indeed, the MSA states that Damen shall not be responsible for operations, including: (1) management and supervision of employees and staff, (2) patient care, (3) adoption or implementation of policies and procedures, (4) staffing patterns, (5) delivery of clinical training, education, care, supervision or direction, (6) determining the budget, (7) setting or implementing operational functions such as nursing, dietary, activities, or housekeeping, and/or (8)

---

[5] Because the Court finds that Spears adequately alleges an employer relationship under the single employer doctrine, it does not address Spears' joint employer and alter ego theories to support her claim that Damen is her employer.

maintenance of the facility grounds, equipment, or capital. (*Id.*) However, the MSA also contains a provision regarding Damen and Bourbonnais working together. (Dckt. #46-2 at 7) ("[Bourbonnais] acknowledges that in order to perform its duties hereunder, [Damen] may be required to take some action under [Bourbonnais's] direction utilizing [Bourbonnais's] employees, equipment and facilities.")). Damen argues the provision supports its position that it does not have control over Bourbonnais, but in Spears' view, the provision demonstrates that Damen is able to utilize Bourbonnais's resources. (Dckt. ##46 at 5; 48 at 6). Regardless of how the provision is read, it shows a connection between Damen and Bourbonnais insofar that they may be required to work together. Without information as to whether the provision has ever been used, and how, it does not suggest "the absence of an arm's length relationship." *See Lihli Fashions Corp., Inc.*, 80 F.3d at 747.

Spears points to the Bourbonnais employee handbook which uses "facility" (referring to Bourbonnais) and "Citadel Healthcare" (referring to Damen) throughout. (Dckt. #46 at 5 (citing Dckt. #46-5)). Graf couches the references to Citadel Healthcare as "oversight[s]," (Dckt. #46-1 at 24), and Damen claims Bourbonnais should have updated the "periodic, erroneous references to 'Citadel Healthcare,'" (Dckt. #48 at 7). The Court cannot construe the record in the light most favorable to Damen on its motion to dismiss by accepting Graf's assertion regarding what she claims are "oversights." As such, the employee handbook remains open to interpretation and does not rebut the plausibility of Spears' allegation that the two entities are interrelated.

Further, while Damen explains that Damen and Bourbonnais do not share office space or hold combined bank accounts, the MSA allows for Damen to establish bank accounts on Bourbonnais's behalf and to process Bourbonnais's payroll. (Dckt. #46-2 at 5); *see Harris v. Skokie Maid & Cleaning Serv., Ltd.*, No. 11 CV 8688, 2013 WL 3506149, at *5 (N.D.Ill. July 11,

8

2013) (maintaining payroll records considered in finding defendant to be an employer); *Lippert Tile Co.*, 724 F.3d at 947 (finding three entities to be interrelated where one maintained business records, processed payroll, handled billing, and managed bank accounts for the other two). Damen also has access to at least some of Bourbonnais's records. (Dckt. #46-1 at 12, 18).

In sum, when the Court construes the record in the light most favorable to Spears, the record supports the plausibility of her allegation that Bourbonnais and Damen are interrelated.

## 2. Common Management and Centralized Control over Labor Relations

Damen combines the next two factors—common management and centralized control over labor relations[6]—arguing that Spears does not plausibly allege the existence of either. The Court disagrees. Starting with common management, courts look to "actual or active control, as distinguished from potential control, over the other's day-to-day operations," *Lippert Tile Co.*, 724 F.3d at 947, and emphasizes "common control over hiring and firing of employees, as well as other daily management decisions." *United Carpet, Inc.*, 2020 WL 3077541, at *8, *quoting Auto. Mechs. Local 701 Union & Indus. Pension Fund v. Dynamic Garage, Inc.*, No. 16 CV 8967, 2018 WL 4699842, at *6 (N.D.Ill. Sept. 30, 2018). To demonstrate centralized control of labor relations, courts consider "who is responsible for hiring, firing and evaluating employees." *United Carpet, Inc.*, 2020 WL 3077541, at *8.

Spears asserts that Damen's duties "encompass all aspects of the facility" including the responsibility "for developing and implementing all aspects of employment for Bourbonnais employees." (Dckt. #46 at 6). Damen disagrees, arguing that the MSA allows Damen to only make "non-binding recommendations" to Bourbonnais. (Dckt. #48 at 9 (citing Dckt. #46-2 at

---

[6] At least one court has found these two factors to be "closely related." *See Chi. Regional Council of Carpenters Pension Func. v. United Carpet, Inc.*, No. 18 CV 4785, 2020 WL 3077541, at *8 (N.D.Ill. June 10, 2020).

9

6)). The MSA confirms that Damen has the authority to make "non-binding recommendations" to Bourbonnais that Bourbonnais may adopt or reject regarding many services, including "the establishment and implementation of practices for the hiring, orientation, training, supervision, promotion, compensation, discipline and termination of [Bourbonnais's] direct care and clinical management staff."[7] (Dckt. #46-2 at 6). Although Damen's recommendations may be non-binding, Graf was not aware of any instance where Bourbonnais did not follow Damen's advice. (Dckt. #46 at 10 (citing Dckt. #46-1 at 16); Dckt. #46-1 at 42). Graf was also unable to provide any example or instance of a recommendation. (Dckt. #46-1 at 18-19).

Thus, despite the wide range of services on which Damen is available to consult, the Court is left in the dark about how active of a role Damen plays in providing recommendations to Bourbonnais, the number of recommendations Damen provides to Bourbonnais, or what would occur should Bourbonnais disagree with one of Damen's recommendations. The only thing that is clear is that the record contains no evidence that Bourbonnais has ever failed to follow Damen's advice.

Damen argues that this case is "nearly identical" to *Rodriguez*, 2023 WL 3864948, but the Court is not persuaded. In *Rodriguez*, the parties' management service agreement stated that the skilled nursing facility was "*solely and exclusively* responsible for the day-to-day operations of the Facility." *Id.* at *3 (emphasis added). As such, the *Rodriguez* MSA explicitly placed the

---

[7] Damen may also make non-binding recommendations in the following areas: (1) the establishment and implementation of guidelines and policies for patient care and assistance; (2) the establishment of programs and operating procedures for complying with various regulatory agencies; (3) the establishment and implementation of policies and practices for Bourbonnais's medical directors, physicians, and physician's assistants; (4) the establishment of standards and implementation of quality of care guidelines regarding direct care services; (5) the coordination, monitoring, interventions, and reporting for Bourbonnais's improvement initiatives; (6) the coordination or provision of training and development for medical directors, risk managers, nursing managers and direct care staff; (7) the development and implementation of admission policies; and (8) other "consulting and advisory matters" upon which Damen and Bourbonnais mutually agree. (Dckt. #46-2 at 6-7).

10

onus of day-to-day operations on the facility, not on the defendant—an LLC that allegedly provided management consulting services to several skilled nursing facilities. *Id.* Bourbonnais and Damen's MSA contains no such statement. By contrast, the MSA here also provides that Damen "shall perform" additional consulting services, including, for example, human resources, continuing education, risk management, customer service, bookkeeping, accounting, payroll, compliance, marketing, public relations, and media support. (Dckt. #46-2 at 3-6). The fact that Damen "shall" perform the consulting services under the MSA raises a question as to the extent of management control Damen exerted in Bourbonnais's day-to-day operations. Thus, at this stage, the door remains open for the possibility that Damen played an active role in Bourbonnais.

In further support of her position, Spears argues that Damen helped create a "centralized website" where "candidates can apply for positions within a facility under the Citadel network." (Dckt. #46 at 5 (citing Dckt. #46-1 at 21)). Potential applicants can also email a shared general contact email, info@citadelhealthcare.com. (*Id.*). Damen responds that each facility is responsible for its own job postings which are then "automatically routed" to the centralized website "to help obtain as many candidate applications as possible." (Dckt. #46 at 5, *quoting* Dckt. #46-1 at 20). Damen also states that it "does not have any staff that takes a direct role in the hiring process once an applicant applies for a position by e-mail or the website; they do not interview applicants, and they do not make the decision to hire those applicants." (Dckt. #48 at 6 (citing Dckt. #46-1)). Once more, though, the MSA allows Damen to provide recommendations to both establish and implement policies related to hiring, firing, promoting, and disciplining Bourbonnais employees and Damen does not deny that it made recommendations regarding these matters. The Court can further infer, based on Graf's testimony, that any such recommendations

11

would have been followed. Thus, Spears' allegation that Damen controls some employment decisions for Bourbonnais is plausible based on the preliminary record before the Court.

Spears and Damen also dispute the amount of overlap between the two entities in terms of employee management. Graf described Damen as a "corporate" or "centralized" office during her deposition, (Dckt. #46 at 7 (citing #46-1 at 24-25)), but later answered "no" when asked if Damen is a central office during that same deposition, (Dckt. #43 at 3 (citing Dckt. #43-2 at 25)). She testified that Bourbonnais employees may submit discrimination complaints to a "corporate compliance committee" that may *or* may not be made up of Damen employes. (Dckt. #46-1 at 25). In addition, the Bourbonnais employee handbook states that "[q]uestions or concerns about employee responsibilities or the rights of patients and residents should be brought to the attention of your supervisor or the facility administrator who also operates as Citadel Healthcare's [i.e. Damen's] internal compliance officer." (Dckt. #46-1 at 27). Damen again claims this was an "oversight," but, once more, the Court cannot credit Damen's effort to explain away this evidence when considering its motion to dismiss.

In sum: the degree of Damen's common management and centralized control over Bourbonnais will require a fact-intensive undertaking that can be explored on summary judgment after further discovery. *See, e.g.*, *Vasquez v. Toko Electric LLC*, No. 23 CV 1799, 2024 WL 36863, at *2 (N.D.Ill. Jan. 3, 2024) ("It would be premature to conduct such a fact-intensive analysis at the pleadings stage without the benefit of discovery.").

### 3. Common Ownership

Finally, Damen disputes that Damen and Bourbonnais share common ownership while at the same time admitting that there is "some level of overlapping ownership." (Dckt. #48 at 10). Common ownership is typically found "when two companies are owned by the same

12

individual(s)." *United Carpet, Inc.*, 2020 WL 3077541, at *3, *quoting Fox Valley & Vicinity Construction Workers Welfare Fund v. Morales*, No. 17 CV 416, 2019 WL 247538, at *3 (N.D.Ill. Jan. 17, 2019). Spears alleges that Jonathan Aaron manages both Damen and Bourbonnais. (Dckt. #22 ¶¶4, 5). Bourbonnais and Damen reported Aaron as an individual owning more than 5% of each entity in their respective Rule 7.1 disclosures. (Dckt. ##13; 31). Graf's testimony is in accord. (Dckt. #46-1 at 43 ("Q: So Jonathan Aaron has an ownership in the company that owns the building, he has an ownership interest in Citadel of Bourbonnais, and he has an ownership interest in Damen, correct? A: Yes.")). This factor weighs against the dismissal of Spears' amended complaint. *See Bruske Capitol Watertown Sprechers, LLC*, No. 19 CV 851, 2021 WL 7502269, at *7 (W.D.Wis. May 26, 2021) (finding common ownership at the conditional certification stage where there was partial overlap of ownership).

In sum, Spears has plausibly alleged that Damen is her employer under the single employer doctrine. Damen disputes this conclusion, but the jurisdictional discovery does not unequivocally rebut the plausibility of Spears' allegation that Damen is her employer. *Tapia v. Infinity Janitorial Contractors, Inc.*, No. 23 CV 14291, 2024 WL 5107284, at *2 (N.D.Ill. Dec. 12, 2024) ("Though no one factor is dispositive, the balancing of factors is properly reserved for analysis at summary judgment. As such, Tapia has satisfied the pleading standard."). Damen may renew its argument on summary judgment when the factual record is more developed, and the Court can perform a more extensive analysis as to the factors establishing an employer relationship. *Reed v. Vintage Healthcare Servs., Inc.*, No. 24 C 3186, 2025 WL 36231, at *2 (N.D. Ill. Jan. 6, 2025) ("the present dispute is best resolved at the summary-judgment stage, once a full factual record has been developed."); *Vasquez*, 2024 WL 36863, at *2; *Dalton v. Sweet Honey Tea, Inc.*, No. 23 CV 01793, 2023 WL 8281524, at *7 (N.D.Ill. Nov. 30, 2023) ("It

13

is premature for the Court to conduct this extensive analysis at the initial pleading stage."); *Brown*, 2013 WL 5304100, at *6 ("whether the final analysis goes to Plaintiffs or Defendant is a matter more appropriately resolved at summary judgment"). For now, it is sufficient that Spears has plausibly alleged that Damen is her employer.

### B. Spears States a Claim for Relief under the FLSA and IMWL and the Court Denies Damen's Motion to Dismiss Pursuant to Rule 12(b)(6).

Damen argues that Spears fails to state a claim to plausibly show she is entitled to relief under the FLSA or IMWL based on its assertion that Spears improperly relied on outside materials—specifically, the jurisdictional discovery—to rebut its 12(b)(6) motion and that the Court should disregard Spears' use of such evidence because it falls outside of the "four corners of the complaint." (Dckt. #48 at 1). The Court disagrees.

While a defendant may base its Rule 12(b)(6) only on the "complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," a party *opposing* a Rule 12(b)(6) motion "has much more flexibility." *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). So long as the additional material is not inconsistent with the pleadings, a plaintiff may use the outside material to "show a court that there is likely to be some evidentiary weight behind the pleadings the court must evaluate." *Kuebler v. Vectren Corp.*, 13 F.4th 631, 636 (7th Cir. 2021); *see Hrubec v. Nat'l R.R. Pass. Corp.*, 981 F.3d 962, 963-64 (7th Cir. 1992) (explaining a plaintiff may assert new facts by affidavit or brief to defend against a motion to dismiss); *Derfus v. City of Chi.*, 42 F.Supp.3d 888, 893 n.1 (N.D.Ill. 2014) (plaintiff may submit materials outside the pleadings in response to motion to dismiss). Thus, Spears' use of jurisdictional discovery to defend against Damen's Rule 12(b)(6) motion was appropriate.

14

Furthermore, it is well-settled that Spears need not allege or explicitly plead a legal theory in her amended complaint, and it is "immaterial" if her legal theories are "not spelled out." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1023 (7th Cir. 2018) (citing *Johnson v. Shelby*, 135 S.Ct. 346, 346-47 (2014)). Accordingly, Spears' complaint cannot be dismissed simply because it did not list the legal theories under which she intends to proceed by name. (*See* Dckt. #48 at 14 ("nowhere in the Amended Complaint does Plaintiff allege, even in a conclusory manner, that Damen is liable for [Bourbonnais's] alleged FLSA and IMWL violations under an alter ego liability theory.")). Indeed, the Seventh Circuit has "recognized that a plaintiff may 'supplement' the complaint with 'extra assertions' in a memorandum opposing a motion to dismiss." *Knox v. Curtis*, 771 Fed.Appx. 656, 658 n.2 (7th Cir. 2019), *quoting Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997). Spears has sufficiently done so here.[8]

In sum: since Spears has plausibly alleged that Damen is her employer in consideration of the allegations of the amended complaint, the jurisdictional discovery, and her responsive briefing, Damen's motion to dismiss the amended complaint under Rule 12(b)(6) is denied.

---

[8] Finally, the Court finds that Damen has waived its argument as to Spears grouping together Damen and Bourbonnais as "Defendants" in her amended complaint. Damen devotes only a footnote to this argument, (Dckt. #43 at 11 n.3), and it does not develop this argument or explain how it lacks notice of the claims against it. *See Hernandez v. Rhee*, No. 18 CV 7647, 2021 WL 3408510, at *21 (N.D.Ill. Aug. 4, 2021) ("[I]t is inappropriate to make arguments in a footnote and Helm waives this argument by raising it only in a footnote."); *Fuery v. City of Chi.*, No. 7 CV 5428, 2016 WL 5719442, at *14 (N.D.Ill. Sept. 29, 2016) ("Arguments raised only in footnotes are waived.").

## CONCLUSION

For the reasons set forth above, the Court denies defendant Damen's motion to dismiss pursuant to Federal Rules of Procedure 12(b)(1) and 12(b)(6), (Dckt. #42). Damen shall answer or otherwise plead to Spears' amended complaint on or before February 18, 2025.

**DATE: January 28, 2025**

**Jeffrey I. Cummings**
**United States District Court Judge**